**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 04:10 PM November 26, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JANICE L. PROTZ, | ) | CASE NO. 06-61512 |
| | ) | |
| Debtor. | ) | ADV. NO. 12-6113 |
| _____ | ) | |
| ANNE PIERO SILAGY, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| JOHN R. PROTZ, | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |

Plaintiff, the chapter 7 trustee ("Trustee"), filed a motion for summary judgment on October 2, 2013. She contends that there are no material facts in dispute and she is entitled to judgment as a matter of law for turnover of one-half the marital portion of Defendant's Career Bonus Growth Plan ("Plan"). Defendant, the Debtor's ex-husband, argues that the amount Plaintiff is entitled to is zero because the Plan had no value at the time the parties divorced, and it cannot now be valued, so there is no marital portion to which Debtor, and now Trustee, is entitled.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated

1

April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Defendant was employed by Federated Mutual Insurance Company ("Federated") from 1985 until his retirement on June 30, 2012. From November 1, 1985 through December 31, 2000, he participated in the company's Career Bonus Growth Plan ("Plan"), an unfunded, nonqualified deferred compensation plan. Throughout this period, he earned "credits" into the plan, as well as interest. The Plan contained vesting requirements and was subject to complete divestment if Defendant's employment with Federated terminated. Defendant's interest in the Plan funds vested when he retired in June 2012. At that time, the balance in the Plan was $299,566.00.

Defendant married Debtor on February 21, 1987 and they were married almost fourteen years, until their divorce in October 2000. The domestic relations court provided for the Plan in the division of assets. Recognizing that it was subject to forfeiture, the court said it could not place a present value on the Plan but made the following provision for it in the decree:

> Plaintiff shall receive one-half (1/2) of the marital portion of the Career Growth Bonus Plan if and when Defendant receives payments from the Career Growth Bonus Plan. Defendant shall provide Plaintiff with notification of receipt of payments from this Career Growth Bonus Plan within forty-five (45) days of payment or notification, whichever is first in point of time.

(Pl.'s Mot. Summ. J., Ex. A ¶ 5, ECF No. 32-1) Defendant notified the Trustee that he received his first payment under the Plan on July 20, 2012. He will receive $6,573.85 per month until approximately June 22, 2016. (Pl.'s Mot. Summ. J. Ex. B ¶ 5, ECF No. 32-2)

Trustee obtained an expert, Michael L. Libman, ASA, MSPA, MAAA, EA, FCA, to value the marital portion of the Plan. After reviewing various documents, including annual statements from Federated, and tracing the amounts credited, as well as the applicable interest rates for each Plan year, Mr. Libman provided an expert report opining that the marital portion of the Plan was $261,173.00 as of June 30, 2012. Under the divorce decree, Debtor is entitled to fifty percent (50%) of the marital portion, or 43.59189% of the Plan value as of the retirement date, or $130,586.50.

## LAW AND ANALYSIS

Trustee argues that the estate's interest in the Plan is $130,586.50. She seeks an order declaring this amount to be property of the estate and seeks turnover of one-half of the value of the

marital portion of any payments that Defendant has received to date and will receive in the future from the Plan. Defendant opposes her request, claiming that the value of the Plan remains at issue, making summary judgment untenable.

Federal Civil Rule 56 applies in bankruptcy by way of Bankruptcy Rule 7056. The court is instructed to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(a). Thus, when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is compulsory. Id. at 322. The initial burden resides with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the movant meets its burden, and presents a "properly supported motion for summary judgment, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Sta-Rite Ind., LLC v. Franklin Elec. Co., Inc., 519 Fed.App'x 370, 375 (6th Cir. 2013) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). Genuine disputes of material facts turn on whether "a reasonably jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This means that there must be "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing version of the truth at trial." Id. at 249 (citing First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).

The rule itself contains guidance on how to support a fact:

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

The non-moving party profits from the court viewing the facts, and reasonable inferences therefrom, in its favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In his amended answer, Defendant admitted that "[o]ne-half of the marital portion of the Plan payments that the Defendant has received and will receive into the future constitutes property the Debtor's estate and must be turned over to the Trustee pursuant to 11 U.S.C. § 542(a)." (Def.'s Am. Answer ¶ 11, ECF No. 8). Looking at the divorce judgment, it is clear that the domestic relations court considered the Plan to be a marital asset. In paragraph eight of the order, the court outlined the Plan's characteristics, and acknowledged it could not presently value the plan, but explicitly stated it would make provision for it in the order, which it did in paragraph five. Debtor was entitled to receive a one-half interest in the marital portion "if and when Defendant receives payments from [the Plan]." Clearly, this language recognized the contingencies that could render the Plan valueless to Defendant, and thereby Debtor. However, in the event that Defendant received distributions from the Plan, Debtor was also entitled to some portion. Consequently, the sole issue before the court is the value of the marital portion of the Plan.

It is undisputed that the Plan, as of Defendant's retirement, was valued at $299,566.00. Relying on the expert opinion of Michael L. Libman, ASA, MSPA, MAAA, EA, FCA, Trustee posits that the marital portion is worth $130,586.50. Mr. Libman's qualifications as an expert are unchallenged. His report explains how he arrived at his valuations. Attached to the report are various documents from Federated, as well as Mr. Libman's tracing report, that establish his figure. Trustee has adequately supported the valuation she advances and has therefore met her initial burden on summary judgment.

Defendant's first challenge to the valuation references "numerous experts who have stated that the Plan either has no value or is impossible to fix with a value." According to Defendant, both he and his expert "strongly" dispute the figure advanced by Trustee. Defendant failed to create genuine issues of material fact on this point.

Defendant, contending to also be an expert,[1] filed a self-serving affidavit in support of his position. Assuming there is a proper foundation for the court's consideration of Defendant's opinion, it does not advance a contrary value or methodology. In paragraph eleven of the affidavit, he argues that "the methods used by Plaintiff's expert are not the correct way to evaluate this Plan." The problem is that he introduces no alternative method, nor does he explain why it is an improper method except to state that there are ongoing contingencies that could cause termination. An expert cannot merely state a legal conclusion, but must "outline a line of reasoning arising from a logical foundation." Brainerd v. Am. Skandia Life Assurance Corp., 432 F.3d 655 (6th Cir. 2005) (citing Am. Key Corp. v. Cole Nat'l Corp., 762 F.2d 1569, 1579-80 (11th Cir. 1985)). To create a genuine issue of material fact, there has to be a counter to Trustee's expert's opinion. Denial of the existence and computation of math is not a factual issue.

Although Defendant referenced his expert's report, he did not include it. It is, however, attached to Trustee's motion for summary judgment. Disregarding any procedural issues, Mr. Hetsler was clearly looking at the valuation issue from the date of the parties' divorce: "on the date of divorce, Sept. 15, 2000, there were no vested benefits payable from the deferred compensation plan and thus no marital portion to divide." (Pl.'s Mot. Summ. J. Ex. G, ECF No.

---

[1] Trustee clearly disagrees with Defendant being treated as an expert.

32-9) This is not in dispute and was recognized and acknowledged by the domestic relations court. The problem is that it fails to recognize what the DR court recognized: the Plan could have value in the future and when it did, Debtor was entitled to something. Mr. Hetsler's opinion simply doesn't focus on the fact that the Plan now has value. Therefore, his opinion cannot be used to create a factual issue.

Defendant attempts to further disparage Trustee's expert valuation by suggesting that numerous other experts were unable to value the Plan. He cites to nothing in the record to support this statement. Trustee did attach a letter from QDRO Consultants Company ("QDRO Consultants") that indicates "the type of figure you are seeking is beyond the scope of our actuarial capabilities, requiring probabilities of termination and disability which we do not recognize in our present value calculations." (Pl.'s Reply, Ex. I, ECF No. 38-2) Several things are notable. First, this letter is dated August 22, 2007, which pre-dates Defendant's retirement and the vesting of the Plan. As the letter clearly states, QDRO Consultants was unwilling to value the Plan because of the contingencies that existed before vesting. Those contingencies are now gone. It is entirely unclear whether QDRO Consultants could now value the marital portion of the Plan. Finally, the letter also doesn't say the Plan could not be valued at that time and, in fact, makes a referral to Mr. Libman, Trustee's expert. Therefore, the only other pertinent item in the record does not support the proposition advocated by Defendant.

Defendant also claims that he is still "earning" the Plan by continuing to abide by certain conditions and submits that he could be forced to reimburse the Plan under certain circumstances. Again, he has not provided one shred of evidence in support of these claims and doesn't reference any Plan provisions or documents. Thus, he has not created a genuine issue of material fact. Hubbert v. Brown, 1997 WL 242084 (6th Cir. 1997) (unpublished) ("It is not the Court's job to sort through hundreds of pages of unmarked exhibits in an attempt to find something that might possibly be interpreted as supporting defendants' arguments."); *see also* Poss v. Morris (In re Morris), 260 F.3d 654, 665 (6th Cir. 2001). Further, this position seems counter to Federated's response to Plaintiff's subpoena request that indicates the payments are static. When asked to provide "[t]he amount of any disbursements that have been made to Mr. Protz under his Plan and the date(s) thereof[,]" Federated responded to question five as follows: "First payment of $6,573.85 was made on 7/20/2012 and the same amount was paid every month since then on or about the 22nd of the month. Payments will end on or about 6/22/2016." (Pl.'s Mot. Summ. J. Ex. B, p. 2, ECF No. 32-2) Defendant has failed to establish a genuine issue of fact as to the value of the marital portion of the Plan.

## **CONCLUSION**

To successfully oppose summary judgment, the nonmovant must establish a foundation firm enough that a jury could find in his favor. Defendant's claims that the Plan cannot be valued, or that Trustee's expert improperly valued the Plan, do not meet this burden. Trustee's expert set forth a value, along with the methodology used to arrive at that valuation, supported by documents from both Federated and Mr. Libman. Defendant provided only a self-serving affidavit that contained no facts that seriously counter Mr. Libman's valuation or methodology. The court will

grant Trustee's motion for summary judgment.

An order will be entered immediately.

# # #

**Service List:**

John J Rutter
Roetzel & Andress, LPA
222 S. Main Street
Akron, OH 44308

Jeffrey Jakmides
325 E Main St
Alliance, OH 44601